## In re MERRILL LYNCH TRUST COMPANY FSB, Henry Medina, and Medina & Medina Group.

No. 04–03–00424–CV.

Court of Appeals of Texas, San Antonio.

Oct. 29, 2003.

---

Charles A. Gall, Joel R. Sharp, Robert B. Gilbreath, Melinda H. Sims, Jenkens & Gilchrist, P.C., Dallas, for appellant.

Hector A. Canales, J.A. "Tony" Canales, Nancy M. Simonson, Canales & Simonson, P.C., Corpus Christi, for appellee.

Sitting: ALMA L. LÓPEZ, Chief Justice, SANDEE BRYAN MARION, Justice, PHYLIS J. SPEEDLIN, Justice.

**OPINION**

SANDEE BRYAN MARION, Justice.

Real party in interest, Chris Pereyra, recovered $2 million in settlement of a personal injury lawsuit. In 1994, she executed a Cash Management Account Agreement ("CMAA") with Merrill Lynch, Pierce, Fenner & Smith Incorporated ("MLPF & S") and deposited the proceeds of the settlement into a cash management account. The CMAA contains an arbitration clause. Relator, Henry Medina, a MLPF & S employee, served as Pereyra's financial advisor. Medina is also licensed to sell insurance. Medina advised Pereyra to establish a trust account with some of her funds, and name relator, Merrill Lynch Trust Company of Texas, as trustee. A Merrill Lynch Life Insurance Policy is the sole asset of the trust, which is governed by a Trust Agreement entered into between Pereyra and Merrill Lynch Trust Company of Texas. In September 2002, Pereyra filed a National Association of Securities Dealers, Inc. ("NASD") arbitration proceeding against MLPF & S and the three relators (Pereyra's "NASD claims"). At the same time, Pereyra filed a lawsuit against the three relators (Pereyra's "lawsuit claims").

In the lawsuit, relators filed a motion to compel arbitration and to stay the trial court proceedings. Relators asked that the claims in the lawsuit be joined with the claims pending in the NASD arbitration proceeding because Pereyra "alleges substantially interdependent and concerted misconduct in the NASD Arbitration and in this suit." The trial court denied the

motion to compel arbitration and to stay the lawsuit, without stating its grounds. Relators filed an interlocutory appeal challenging the trial court's order and asserting the Texas General Arbitration Act applied. Relators also filed this mandamus proceeding challenging the trial court's order, and asserting the Federal Arbitration Act applied. Because we hold the Federal Arbitration Act applies, by separate opinion and judgment we dismiss the appeal for lack of jurisdiction. For the reasons stated below, we deny the petition for writ of mandamus.

## MANDAMUS JURISDICTION

The CMAA contains an arbitration clause that does not expressly invoke either the Federal Arbitration Act, 9 U.S.C. §§ 1–16 ("FAA") or the Texas General Arbitration Act, TEX. CIV. PRAC. & REM. CODE ANN. §§ 171.001 *et seq.* (Vernon 1997 and Supp.2003) ("TGAA"). Whether mandamus is the appropriate avenue for relief depends on whether the CMAA is governed by the FAA or the TGAA. Under the FAA, the denial of a motion to compel arbitration can be reviewed by mandamus because there is no adequate remedy by appeal. *Freis v. Canales,* 877 S.W.2d 283, 284 (Tex.1994); *In re Medallion,* 70 S.W.3d 284, 287 (Tex.App.-San Antonio 2002, orig. proceeding). Under the TGAA, a trial court's order denying arbitration is reviewable only by interlocutory appeal. *Pennzoil Co. v. Arnold Oil Co.,* 30 S.W.3d 494, 497 (Tex.App.-San Antonio 2000, orig. proceeding).

The FAA applies to all suits in state and federal court when the dispute concerns a "contract evidencing a transaction involving commerce." 9 U.S.C. § 2 (1999); *Southland Corp. v. Keating,* 465 U.S. 1, 14–16, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984); *Perry v. Thomas,* 482 U.S. 483, 489, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987).

A contract "evidences a transaction involving commerce" if it involves interstate commerce. *Allied–Bruce Terminix Co. v. Dobson,* 513 U.S. 265, 277–81, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995). "Commerce" under the FAA is broadly construed. *In re Tenet Healthcare, Ltd.,* 84 S.W.3d 760, 765 (Tex.App.-Houston [1st Dist.] 2002, orig. proceeding). A party seeking to compel arbitration under the FAA must establish its right to do so. *Cantella & Co., Inc. v. Goodwin,* 924 S.W.2d 943, 944 (Tex.1996). If it does and the opposing party does not defeat that right, the trial court is obliged to compel arbitration. *Id.*

The issue is not whether the parties' dispute affects interstate commerce, but whether their dispute concerns a transaction that affects interstate commerce. *See Jack B. Anglin Co., Inc. v. Tipps,* 842 S.W.2d 266, 271 (Tex.1992); *In re Education Mgmt. Corp., Inc.,* 14 S.W.3d 418, 423 (Tex.App.-Houston [14th Dist.] 2000, orig. proceeding). The FAA does not require a substantial effect on interstate commerce; rather, it requires only that commerce be involved or affected. *See In re L & L Kempwood Assoc., L.P.,* 9 S.W.3d 125, 127 (Tex.1999) (orig.proceeding). When, as here, there is no express agreement to arbitrate under the FAA, the question of whether the parties' transaction affects interstate commerce is one of fact. *In re Profanchik,* 31 S.W.3d 381, 384 (Tex.App.-Corpus Christi 2000, orig. proceeding).

Pereyra contends the TGAA applies because her lawsuit claims are based entirely on the creation of an irrevocable life insurance trust governed by the laws of Texas, and entered into in Texas between herself (a resident of Texas) and Merrill Lynch Trust Company of Texas. She contends her lawsuit claims focus on the misrepresentations and omissions surrounding the creation of the trust and not

any investments in national securities made via the cash management account. However, in her third amended petition, Pereyra alleged that Merrill Lynch Life Insurance Company "used premiums to purchase Merrill Lynch Mutual Funds which affords a direct benefit to the Merrill Lynch Life Insurance." The Trust Agreement empowers the trustee to invest in every type of property, including stock. Mutual funds and stocks are investments; therefore, the dispute over the Trust Agreement concerns a "transaction involving commerce." *In re Mony Sec. Corp.*, 83 S.W.3d 279, 284 (Tex.App.-Corpus Christi 2002, no pet.) (combined appeal and orig. proceeding); *Eurocapital Group, Ltd. v. Goldman Sachs & Co.*, 17 S.W.3d 426, 430 (Tex.App.-Houston [1st Dist.] 2000, no pet.); *Thomas James Assocs., Inc. v. Owens*, 1 S.W.3d 315, 319 (Tex.App.-Dallas 1999, no pet.). Accordingly, arbitration is governed by the FAA and mandamus relief is appropriate.

## STANDARD OF REVIEW

We review a trial court's determination regarding the existence of an arbitration agreement under an abuse of discretion standard. *In re Koch Indus., Inc.*, 49 S.W.3d 439, 444 (Tex.App.-San Antonio 2001, orig. proceeding); *ANCO Ins. Serv. of Houston, Inc. v. Romero*, 27 S.W.3d 1, 5 (Tex.App.-San Antonio 2000, pet. denied). Because mandamus will issue only to "correct a clear abuse of discretion or the violation of a duty imposed by law when there is no other adequate remedy by law," relators must demonstrate that either: (1) the trial court could reasonably have reached only one decision concerning the resolution of certain factual issues or matters committed to the trial court's discretion; or (2) the trial court failed to analyze or apply the law correctly. *Walker v. Packer*, 827 S.W.2d 833, 839–840 (Tex.1992).

## EXISTENCE OF ARBITRATION AGREEMENT

A party seeking to compel arbitration must establish the existence of a valid, enforceable arbitration agreement and that the asserted claims fall within the agreement's scope. *In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d 571, 573 (Tex. 1999); *In re Koch Indus.*, 49 S.W.3d at 444. The party seeking arbitration has the initial burden to present evidence of an arbitration agreement. *In re Oakwood Mobile Homes*, 987 S.W.2d at 573; *In re Koch Indus.*, 49 S.W.3d at 444. Once the existence of an arbitration agreement has been established, a presumption attaches favoring arbitration. *Henry v. Gonzalez*, 18 S.W.3d 684, 689 (Tex.App.-San Antonio 2000, pet. dism'd by agr.). The burden then shifts to the opposing party to present evidence that the agreement was procured in an unconscionable manner or induced or procured by fraud or duress; that the other party has waived its right to compel arbitration under the agreement; or that the dispute falls outside the scope of the agreement. *In re Oakwood Mobile Homes*, 987 S.W.2d at 573; *In re Koch Indus.*, 49 S.W.3d at 444; *Gonzalez*, 18 S.W.3d at 689.

Here, the only valid enforceable arbitration agreement is contained in the CMAA. While Pereyra is a signatory to that agreement, relators are not. The burden of establishing the existence of a valid and enforceable arbitration agreement includes proving that the party seeking to compel arbitration was a party to the agreement or had the right to enforce the agreement to arbitrate. *Mohamed v. Auto Nation USA Corp.*, 89 S.W.3d 830, 836 (Tex. App.-Houston [1st Dist.] 2002, orig. proceeding). A party that is not a signatory to an arbitration agreement may

enforce the agreement's provisions if the non-signatory "falls into an exception, recognized under general equitable or contract law, that would allow such enforcement." *Id.* at 836; *see also Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 527–28 (5th Cir.2000). Relators assert they are entitled to compel arbitration under the CMAA based on the doctrine of equitable estoppel and because they are agents of a signatory to the CMAA (MLPF & S).

**Equitable estoppel**

Under the doctrine of equitable estoppel, a non-signatory may compel arbitration in two circumstances. *Grigson*, 210 F.3d at 527–28. First, the doctrine applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the non-signatory. *Grigson*, 210 F.3d at 527–28. When each of a signatory's claims against a non-signatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate. *See Texas Enter., Inc. v. Arnold Oil Co.*, 59 S.W.3d 244, 249 (Tex.App.-San Antonio 2001, orig. proceeding). Second, the doctrine applies when a signatory to a contract with an arbitration clause raises claims "of substantially interdependent and concerted misconduct" by both a signatory to the contract and non-signatories to the contract. *Grigson*, 210 F.3d at 527–28; *In re Kenwood Communications Corp.*, No. 04–02–00377–CV, 2003 WL 1191409 *4 (Tex.App.-San Antonio Mar.12, 2003) (orig.proceeding). Whether to utilize equitable estoppel is within a court's discretion. *Grigson*, 210 F.3d at 528; *Texas Enter.*, 59 S.W.3d at 249.

Relators rely on *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110 (3rd Cir.1993), for their assertion that Pereyra would have no claims had she not initiated her relationship with MLPF & S and Medina by signing the CMAA with MLPF & S. Thus, according to relators, Pereyra's claims arise out of and relate directly to the CMAA. Relators' reliance on *Pritzker* is misplaced. In that case, it was established that a Merrill Lynch Cash Management Account for Retirement Plans Agreement was opened for each of five profit sharing trusts. Each agreement contained an arbitration clause. Here, relators presented no evidence that Pereyra would have no claims had she not signed the CMAA. In her third amended petition, Pereyra never once refers to the CMAA. The only evidence offered by relators connecting the CMAA to the trust is an affidavit of a MLPF & S employee establishing that the life insurance was purchased with funds from Pereyra's cash management account. Nothing in the record indicates whether the creation of the trust was conditioned upon Pereyra being a "brokerage" customer of MLPF & S or conditioned upon her having a cash management account with MLPF & S. Nothing in the record establishes that Pereyra had to sign the CMAA as a precondition to her establishing the trust. Aside from Pereyra using cash management funds to buy the life insurance policy, nothing in the record supports relators' conclusory allegation that Pereyra's claims are based on the CMAA or that she had to rely on the terms of the CMAA in asserting her claims against them. *See Merrill Lynch, Pierce, Fenner & Smith v. Wilson*, 805 S.W.2d 38, 39 (Tex.App.-El Paso 1991, no writ).

Relators also assert Pereyra has alleged claims "of substantially interdependent and concerted misconduct" by MLPF & S and relators. Relators contend Per-

eyra's claims all arise from the same discussions held with Medina about how she should invest her settlement proceeds.

In the NASD claim, Pereyra alleged she suffered "severe and unnecessary damages to the value of [her] portfolio due to a consistent pattern of fraudulent and negligent mismanagement" by Medina, Merrill Lynch & Co., Inc., and MLPF & S. Pereyra raised allegations of breach of fiduciary duties, fraudulent and negligent mismanagement, lack of fair dealing, material misrepresentation, self-dealing, negligence, fraud, and violations of federal and state securities laws. All of her NASD claims center on her complaints about how her investments were mishandled. In the lawsuit, Pereyra raised allegations of false and material misrepresentations, fraudulent inducement, unjust enrichment, "reckless and intentional disregard of [her] rights and well being," conflict of interest, deception and manipulation, self-dealing, negligence, and theft. Pereyra raised claims under the Texas Property Code, Insurance Code, Deceptive Trade Practices Act, and the Business and Commerce Code.

Many of Pereyra's causes of action are the same, but the factual allegations underlying each cause of action may be different. Relators allege the claims are interdependent because Pereyra's lawsuit and NASD action involve the same parties, the same meetings between the parties, and the same causes of actions. However, the record does not support relators' contentions. Neither Medina nor Pereyra testified at the hearing and Medina's affidavit states only that the cash management account "involved interstate commerce." Based on a comparison of the two pleadings and a review of the record before the trial court, we conclude relators did not satisfy their burden of establishing the existence of a valid and enforceable arbitration agreement under which they

had the right to compel arbitration. Therefore, the trial court did not abuse its discretion in refusing to apply equitable estoppel.

**Agency**

▉▉▉▉ Relators also contend they are entitled to compel arbitration based on their agency relationship with MLPF & S. "When the principal is bound under the terms of a valid arbitration clause, its agents, employees, and representatives are covered by that agreement." *McMillan v. Computer Translation Sys. & Support, Inc.,* 66 S.W.3d 477, 481 (Tex.App.-Dallas 2001, orig. proceeding). The scope of an arbitration agreement may be extended to claims against agents of the principal when all the agents' allegedly wrongful acts relate to their behavior as agents of the principal signatory company, and those acts were within the scope of the claims covered by the arbitration provisions for which the principal would be liable. *See id.; Pritzker,* 7 F.3d at 1121–22. There is no dispute that Medina is an employee of MLPF & S. Medina & Medina is a trade name used by Medina. Merrill Lynch Trust Company is affiliated with MLPF & S.

▉▉▉ However, the flaw in relators' reasoning is that Pereyra is not attempting to hold MLPF & S liable for her lawsuit claims. MLPF & S is not a defendant in the lawsuit. If MLPF & S were a defendant in the lawsuit and assuming MLPF & S could compel arbitration under the CMAA, then relators could also compel arbitration under the CMAA as agents of MLPF & S. Relators presented no evidence to support a finding that Pereyra's lawsuit claims relate to relators' behavior as agents of MLPF & S. Again, no evidence was offered to establish that relators were working on behalf of MLPF & S on matters covered by the CMAA. According-

ly, the trial court did not abuse its discretion in refusing to apply an agency theory.

Relators did not meet their burden of establishing their right to arbitrate under the CMAA; therefore, the trial court did not err in denying the motion to compel arbitration. Because relators did not establish the existence of an enforceable agreement to arbitrate, we need not reach the issue of whether Pereyra's claims fall within the scope of an agreement to arbitrate.

## WHETHER THE TRIAL COURT PROCEEDINGS SHOULD BE STAYED

■ Although the trial court did not abuse its discretion in denying relators' motion to compel arbitration, the court may still have erred in not staying the trial proceedings pending resolution of the NASD arbitration proceeding. Although relators do not have the right to compel arbitration under the CMAA, they may be entitled to a stay pending the outcome of Pereyra's NASD arbitration if (1) their potential liability in the lawsuit derives from their conduct or MLPF & S's conduct as alleged in the NASD action, and (2) the claims asserted against relators in the lawsuit are based on the same operative facts and are inherently inseparable from the claims asserted in the NASD action. *See Harvey v. Joyce,* 199 F.3d 790, 795 (5th Cir.2000); *Subway Equip. Leasing Corp. v. Forte,* 169 F.3d 324, 329 (5th Cir.1999). Relators also may be entitled to a stay if the lawsuit against them would impair an arbitrator's consideration of claims against them in the NASD proceeding. *See Kroll v. Doctor's Assoc., Inc.,* 3 F.3d 1167, 1171 (7th Cir.1993).

Relators have not established that their liability in the lawsuit, which involves the trust and insurance policy, is derivative of their liability or MLPF & S's liability in the NASD proceeding, which involves Pereyra's securities portfolio. Relators have not established that the claims asserted against them in the lawsuit are based on the same operative facts and are inherently inseparable from the claims asserted in the NASD action. And, they have not explained, or established how, litigation of Pereyra's lawsuit claims would impair an arbitrator's consideration of claims against them in the NASD proceeding. For these reasons, the trial court did not abuse its discretion in refusing to stay litigation of Pereyra's lawsuit claims pending resolution of her NASD claims.

## CONCLUSION

Because relators have not met their burden of establishing their right to arbitrate under the CMAA or their right to a stay of the lawsuit, we deny the petition for writ of mandamus.