**SECURITY SERVICE FEDERAL CREDIT UNION, Appellant**

v.

**Eric C. SANDERS, Carrie Sanders, and Eric M. Sanders, Appellees.**

**In re Security Service Federal Credit Union.**

**Nos. 04–07–00540–CV, 04–07–00625–CV.**

Court of Appeals of Texas, San Antonio.

May 14, 2008.

Melodee L. Gruber, Richard G. Garza, Jackson Walker, L.L.P., San Antonio, TX, for Appellant.

Darby Riley, Law Office of Darby Riley, San Antonio, TX, for Appellees.

Sitting: CATHERINE STONE, Justice, SANDEE BRYAN MARION, Justice, STEVEN C. HILBIG, Justice.

## OPINION

SANDEE BRYAN MARION, Justice.

In these consolidated proceedings, Security Service Federal Credit Union ("SSFCU") complains of the trial court's failure to compel arbitration of claims brought against it by several accountholders. Because we conclude the trial court should have compelled arbitration under an arbitration agreement governed by the

Federal Arbitration Act ("FAA"),[2] we conditionally grant mandamus relief and dismiss the related appeal as moot.

## FACTUAL AND PROCEDURAL BACKGROUND

SSFCU was sued by accountholders Eric C. Sanders, Carrie Sanders, and Eric M. Sanders, for allegedly mishandling numerous loan and deposit accounts. In their petition, the Sanderses claimed SSFCU wrongfully dishonored checks, sold credit insurance, miscalculated loan balances and payments, and committed unauthorized fund transfers.

After answering the Sanderses' suit, SSFCU moved to compel arbitration under two arbitration agreements in documents prepared by SSFCU. According to SSFCU's motion, when the Sanderses opened their accounts, they signed member agreements in which they agreed to be bound by SSFCU's account terms and conditions. These account terms and conditions require that all claims and controversies arising between the parties be resolved by arbitration.[3] Thereafter, the Sanderses signed fourteen loan documents, each of which contained another arbitration agreement requiring "any unresolved controversy or claim arising from or relating to this contract or breach thereof [ ] be settled by arbitration. . . ." Thus, the arbitration agreement in the account terms and conditions is general, governing all controversies that may arise between the parties; and the arbitration agreement in the loan documents is specific, governing controversies arising from the loans.

Both arbitration agreements require all statutory and non-statutory claims to be submitted to arbitration before the American Arbitration Association; however, they include different attorney's fees and costs provisions. The general arbitration agreement states that the "arbitrator(s) will award to the prevailing party recovery of all costs and fees (including attorneys' fees and costs, administration fees and costs, and arbitrator(s) fees)." The loan arbitration agreement provides that "[a]ll fees and expenses of the mediation and/or arbitration shall be borne by the parties equal-

2. It is undisputed that the FAA governs the arbitration agreements in this case.

3. The arbitration provisions in the account terms and conditions provide in part:

**ARBITRATION**
All claims or controversies arising between you and the Bank shall be subject to arbitration. ARBITRATION IS FINAL AND BINDING ON THE PARTIES AND SUBJECT TO ONLY VERY LIMITED REVIEW BY A COURT. IN ARBITRATION THE PARTIES ARE WAIVING THEIR RIGHT TO LITIGATE IN COURT, INCLUDING THEIR RIGHT TO A JURY TRIAL. IF YOU HAVE ANY QUESTIONS ABOUT ARBITRATION, CONSULT AN ATTORNEY OR THE AMERICAN ARBITRATION ASSOCIATION.
ARBITRATION PROVISIONS:
(a) Any claim or controversy ("Dispute") between or among the parties and their assigns, including but not limited to Disputes arising out of or relating to this agreement, this arbitration provision ("arbitration clause"), or any related agreements or instruments ("Related Documents"), and including but not limited to a Dispute based on or arising from an alleged tort, will at the request of any party be resolved by binding arbitration in accordance with the applicable arbitration rules of the American Arbitration Association ("the Administrator"). The provisions of this arbitration clause will survive any termination, amendment, or expiration of this agreement or Related Documents. The provisions of this arbitration clause take[ ] the place of any prior arbitration agreement between or among the parties. If any provision of this arbitration clause should be determined to be unenforceable, all other provisions of this arbitration clause shall remain in full force and effect.

ly. However, each party shall bear the expense of its own counsel. . . ."

In resisting arbitration, the Sanderses argued that both arbitration agreements were unenforceable because they were substantively and procedurally unconscionable under Texas contract law. The trial court concluded the arbitration agreements were unconscionable on each of the grounds asserted and denied the motion to compel arbitration.

## UNCONSCIONABILITY DEFENSES

■ A party seeking a writ of mandamus to compel arbitration under the FAA must: (1) establish the existence of a valid agreement to arbitrate, and (2) show that the claims in dispute are within the scope of the agreement. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex.2005) (orig. proceeding). The burden of establishing the existence of a valid and enforceable arbitration agreement includes proving that the party seeking to compel arbitration had the right to enforce the agreement to arbitrate. *In re Merrill Lynch Trust Co. FSB*, 123 S.W.3d 549, 554 (Tex.App.–San Antonio 2003, orig. proceeding), *mand. granted*, 235 S.W.3d 217 (Tex.2007). Once a valid arbitration agreement has been established, a presumption attaches favoring arbitration. *In re Hartigan*, 107 S.W.3d 684, 687–88 (Tex.App.–San Antonio 2003, orig. proceeding). The burden then shifts to the opposing party to establish that the agreement was procured in an unconscionable manner or induced or procured by fraud or duress; that the other party has waived its right to compel arbitration under the agreement; or that the dispute falls out-

side the scope of the agreement. *In re Merrill Lynch*, 123 S.W.3d at 554. In this case, all of the Sanderses' defenses to the arbitration agreements are unconscionability defenses of which there are two categories: (1) procedural unconscionability, which refers to the circumstances surrounding the adoption of the contract, and (2) substantive unconscionability, which refers to the overall fairness of the contract itself. *In re Halliburton Co.*, 80 S.W.3d 566, 571 (Tex.2002) (orig. proceeding).[4]

### A. Substantive Unconscionability

■ Under Texas contract law, courts may properly decline to enforce a contract, or a provision in a contract, on the ground that it is against public policy and therefore substantively unconscionable. *See Hoover Slovacek LLP v. Walton*, 206 S.W.3d 557, 562 (Tex.2006); *Crowell v. Housing Auth. of Dallas*, 495 S.W.2d 887, 889 (Tex.1973); Tex. Bus. & Com.Code Ann. § 2.302 (Vernon 1994) (courts may refuse to enforce contractual provisions determined to be unconscionable as a matter of law). A contractual provision is against public policy when it is illegal or inconsistent with the public's best interest. *Montgomery v. Browder*, 930 S.W.2d 772, 778 (Tex.App.–Amarillo 1996, writ denied). Expressions of public policy are found in the constitution and statutes, as well as the common law. *Id.* "[W]hether a contract . . . is contrary to public policy and unconscionable at the time it is formed is a question of law." *Hoover*, 206 S.W.3d at 562. Here, one of the defenses raised by the Sanderses is that both arbitration agreements are unconscionable as a whole because the attorney's fees and costs provisions contained in the agreements limit

4. As to the scope of the arbitration agreements, in its motion to compel arbitration, SSFCU asserted the Sanderses' claims fell within the scope of the agreements. In their response, the Sanderses objected to arbitra-

tion on the ground that the arbitration agreements were unconscionable, but they did not assert their claims were outside the scope of the agreements.

their right to recover attorney's fees and costs as allowed under the Texas Deceptive Trade Practices–Consumer Protection Act ("DTPA")[5] and subject them to paying SSFCU's attorney's fees and costs under circumstances contrary to the DTPA.

As a preliminary matter, SSFCU suggests the allocation of attorney's fees and costs is a question for the arbitrator in making an award, and does not affect the unconscionability of the agreements. We disagree. Whether or not the attorney's fees and costs provisions are substantively unconscionable and render the arbitration agreements unenforceable as a whole involves the threshold issue of arbitrability. *See In re Halliburton,* 80 S.W.3d at 572 (clarifying that courts may address claims that an arbitration clause is substantively unconscionable). SSFCU contends the Sanderses were required to provide evidence to support their substantive unconscionability defense. Again, we disagree. Given the nature of the Sanderses' defense—that the two arbitration agreements deprive them of statutory rights and remedies and are substantively unconscionable as a matter of law—the Sanderses had no evidentiary burden with respect to this defense. *See Hoover,* 206 S.W.3d at 562. We now turn to the question of whether either or both of the arbitration agreements at issue here are unconscionable.

All but one of the Sanderses' claims were based, at least in part, on the DTPA.[6] The Sanderses also requested attorney's fees under the DTPA. Neither party disputes that "statutory claims can be appropriately resolved through arbitration," and courts "enforce[ ] agreements to arbitrate that involve such claims." *Green Tree Fin. Corp.-Ala. v. Randolph,* 531 U.S. 79, 89, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000). "[E]ven claims arising under a statute designed to further important social policies may be arbitrated because so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum, the statute serves its functions." *Id.* at 90, 121 S.Ct. 513 (internal quotation omitted). However, in some instances, when the arbitration provision is so prohibitive as to effectively deprive a party of his or her statutory rights, the arbitration agreement may be invalidated. *Id.* at 91–92, 121 S.Ct. 513 (acknowledging that an arbitration provision could be invalidated because the issues were unsuitable for arbitration); *see also Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 637, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) (recognizing the potential for arbitration agreements to defeat the remedial and deterrent functions of a statute).

SSFCU acknowledges the two arbitration agreements limit the Sanderses' legal remedies, but nevertheless asserts the Sanderses' substantive rights under the DTPA are unaffected. The Sanderses counter that the purpose of any arbitration agreement is to determine the choice of forum, not the substantive law (here, the DTPA) governing the dispute. The Sanderses contend the trial court was justified in not compelling arbitration, primarily because the attorney's fees and costs provisions in the arbitration agreements improperly limit their statutory DTPA rights and remedies and are therefore substantively unconscionable under Texas law.[7]

---

5. *See* Tex. Bus. & Com.Code Ann. §§ 17.41–17.63 (Vernon 2002 and Supp.2007).

6. The Sanderses' petition also includes a slander claim.

7. Both parties contend, and our research confirms, that no other Texas appellate court has determined whether attorney's fees and costs provisions in an arbitration agreement are substantively unconscionable as a matter

Texas law mandates that consumers recover court costs and reasonable and necessary attorney's fees when they prevail in a DTPA action. TEX. BUS. & COM.CODE ANN. § 17.50(d) (Vernon Supp.2007) ("Each consumer who prevails shall be awarded court costs and reasonable and necessary attorneys' fees."). Generally, the DTPA does not require consumers who are unsuccessful in bringing DTPA claims to reimburse the attorney's fees and costs of the prevailing defendant. The only exception is when the consumer's action is found to be groundless in fact or law, or brought in bad faith, or brought for the purpose of harassment. *Id.* § 17.50(c).

Here, the general arbitration agreement requires the arbitrator to "award to the prevailing party recovery of all costs and fees" including attorney's fees and costs. Thus, this provision requires the arbitrator to assess attorney's fees and costs against consumers if they are unsuccessful in prosecuting a DTPA action, without the statutorily-required finding of groundlessness or its equivalent. The loan arbitration agreement, on the other hand, requires SSFCU and the Sanderses to each bear the expense of their own counsel and to bear other costs equally. Under this provision, the Sanderses would not be able to recover attorney's fees and costs as mandated by the DTPA, even if they prevailed on their DTPA claims in arbitration.

Such a result is inconsistent with Texas public policy. In enacting the DTPA, the Texas Legislature instructed that the statute "shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty and to provide efficient and *economical* procedures to secure such protection." TEX. BUS. & COM.CODE ANN. § 17.44 (Vernon 2002) (emphasis added). The Texas Supreme Court has recognized that "the DTPA's primary goal [is] to protect consumers by encouraging them to bring consumer complaints...." *PPG Indus., Inc. v. JMB/Houston Centers Partners Ltd. P'ship*, 146 S.W.3d 79, 84 (Tex.2004). "While the DTPA allows the attorney general to bring consumer protection actions, one of the statute's pri-

of law because they limit statutory rights and remedies under the DTPA. One Texas appellate court has addressed the substantive unconscionability of an arbitration agreement with respect to the Texas Labor Code. *See In re Luna*, 175 S.W.3d 315, 323 (Tex.App.–Houston [1st Dist.] 2004, orig. proceeding [mand. pending]). In *Luna*, the First Court of Appeals held that the preclusion of two statutory remedies, punitive damages and reinstatement, supported a finding that the arbitration agreement as a whole was substantively unconscionable. *Id.*

Courts in other state and federal jurisdictions have found arbitration agreements that reduce state statutory remedies to be substantively unconscionable. *See, e.g., Acorn v. Household Intern., Inc.*, 211 F.Supp.2d 1160 (N.D.Cal.2002) (arbitration provision was substantively unconscionable when it significantly limited consumers' state law remedies); *Lozada v. Dale Baker Oldsmobile, Inc.*, 91 F.Supp.2d 1087 (W.D.Mich.2000) (arbitration provision was substantively unconscionable when it waived remedies available under state consumer protection act); *Whitney v. Alltel Comm., Inc.*, 173 S.W.3d 300 (Mo.App.2005) (arbitration clause was substantively unconscionable when it required customers to bear arbitration costs and prohibited the award of incidental, consequential, or exemplary damages otherwise available under state law); *State ex rel. Dunlap v. Berger*, 211 W.Va. 549, 567 S.E.2d 265 (2002) (arbitration provision was substantively unconscionable when it prevented consumers from utilizing remedies essential to enforcing rights under state consumer protection statute); *Powertel, Inc. v. Bexley*, 743 So.2d 570 (Fla.Dist.Ct.App.1999), *rev. denied*, 763 So.2d 1044 (Fla.2000) (arbitration clause was substantively unconscionable because customers were required to waive state statutory remedies of punitive damages and injunctive relief).

mary purposes is to encourage *consumers themselves* to file their *own* complaints...." *Id.* (emphasis in original). "[The Legislature] provided for the recovery of attorney's fees under the Deceptive Trade Practices Act, as encouragement to *those abused* by certain prescribed conduct to avail *themselves* of the remedies of the Act." *Id.* at 84–85 (quoting *First City Bank–Farmers Branch, Tex. v. Guex,* 677 S.W.2d 25, 30 (Tex.1984)). Thus, the attorney's fees provisions of the DTPA are essential to vindicating consumer rights in Texas because they make it feasible for consumers to avail themselves of the remedies of the DTPA. *See id.*

Given the public purpose served by the DTPA—encouraging individual consumers to prosecute consumer claims and making it economical for them to do so—we are of the opinion that the attorney's fees and costs provisions in both arbitration agreements are unconscionable when applied to DTPA claims. *See Ting v. AT & T,* 182 F.Supp.2d 902, 933 (N.D.Ca.2002) (holding that, "[w]hereas this clause may be illegal as applied to plaintiffs' statutory rights under the CLRA, it is not substantively unconscionable when applied to non-statutory claims."), *aff'd in part and rev'd in part on other grounds,* 319 F.3d 1126 (9th Cir.2003), *cert. denied,* 540 U.S. 811, 124 S.Ct. 53, 157 L.Ed.2d 24 (2003); *see also Hoover,* 206 S.W.3d at 563 (provision in attorney-client contract held substantively unconscionable on public policy grounds); *Crowell,* 495 S.W.2d at 889 (contract exempting housing authority from liability for negligence held unconscionable on public policy grounds). By agreeing to arbitrate their DTPA claim, the Sanderses did "not forgo the substantive rights afforded by the statute;" they "only submit[ted their claim] to ... resolution in an arbitral, rather than a judicial, forum." *Mitsubishi Motors,* 473 U.S. at 628, 105 S.Ct. 3346. Because the attorney's fees and costs pro-

visions in these arbitration agreements substantially diminish the Sanderses' DTPA rights and are contrary to Texas public policy, the trial court did not abuse its discretion in concluding these provisions were substantively unconscionable as a matter of law as applied to the Sanderses' DTPA claims. *See In re Luna,* 175 S.W.3d 315, 324 (Tex.App.–Houston [1st Dist.] 2004, orig. proceeding [mand. pending]) (holding the preclusion of two statutory remedies supported a finding that an arbitration agreement was substantively unconscionable as a whole); *see also* TEX. BUS. & COM.CODE ANN. § 2.302(a) (Vernon 1994) (courts may refuse to enforce a contractual provision that is unconscionable as a matter of law).

▮▮▮ Nevertheless, the conclusion that the attorney's fees and costs provisions in both arbitration agreements are substantively unconscionable when applied to DTPA claims does not mean the trial court should not have compelled arbitration. Under state-law contract principles, a court is generally authorized to sever an illegal or an unenforceable provision from a contract and enforce the remainder of the contract. *Hoover,* 206 S.W.3d at 565; *Williams v. Williams,* 569 S.W.2d 867, 871 (Tex.1978) (an illegal provision may be severed if it does not constitute the main purpose of the contract). Severability is determined by the intent of the parties as evidenced by the language of the contract. *In re Kasschau,* 11 S.W.3d 305, 313 (Tex. App.–Houston [14th Dist.] 1999, orig. proceeding); *Montgomery,* 930 S.W.2d at 778–79.

▮▮▮ The loan arbitration agreement expressly prohibits the severance of any provision deemed unenforceable. As a result, the trial court did not err when it refused to compel arbitration under the

loan arbitration agreement.[8] However, the general arbitration agreement, by contrast, expressly provides as follows: "If any provision of this arbitration clause should be determined to be unenforceable, all other provisions of this arbitration clause shall remain in full force and effect." The Sanderses argue that SSFCU waived its right to have the attorney's fees and costs provision severed because it did not move for severance in the trial court. We disagree. In its motion to compel arbitration, SSFCU sought enforcement of the entire general arbitration agreement, which specifically includes the above-quoted severability clause. Therefore, we conclude the trial court did not properly apply the law when it failed to enforce the arbitration agreement absent the unenforceable attorney's fees and costs provision. *See Hadnot v. Bay, Ltd.*, 344 F.3d 474, 478 (5th Cir.2003) (holding the severance of an illegal punitive damage restriction from an arbitration agreement was proper because it promoted public policy favoring arbitration).

## B. Procedural Unconscionability

■■■ We next address the Sanderses' procedural unconscionability defense to the general arbitration agreement. Procedural unconscionability is concerned with assent and focuses on the facts surrounding the bargaining process. *Pony Express Courier Corp. v. Morris*, 921 S.W.2d 817, 821 (Tex.App.–San Antonio 1996, no writ). In this case, the trial court concluded the general arbitration agreement was procedurally unconscionable and unenforceable because it was not signed by the Sanderses, was not shown to have been provided to them, and was buried in fine print. We disagree.

■■■ There is no requirement under the FAA or Texas law that an arbitration agreement be signed so long as it is written and agreed to by the parties. *See In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 606 (Tex.2005) (enforcing arbitration provision referenced and agreed to in numerous enrollment forms). Below, SSFCU submitted member agreements signed by the Sanderses in which they "agree[d] to be bound by the terms and conditions of any account that I have in the Credit Union now or in the future." Thus, SSFCU met its initial burden of showing the Sanderses agreed to be bound by the general arbitration agreement. The burden then shifted to the Sanderses to show they were not provided the account terms and conditions. *See id.* at 608 ("As neither affidavits nor testimony show that any pharmacy joined the PCS network without an opportunity to read the Provider Agreement [containing the arbitration agreement], the pharmacies have not carried their evidentiary burden."). The Sanderses submitted no evidence in response to SSFCU's motion to compel. In the absence of such evidence, the Sanderses neither rebutted SSFCU's showing of a valid arbitration agreement, nor established the procedural unconscionability of the general arbitration agreement. *See id.*

Additionally, the trial court concluded the general arbitration agreement was procedurally unconscionable because it was buried in fine print. Again, we disagree. The general arbitration agreement appears in a pamphlet in the same print size as the other account terms and conditions and under the heading "ARBITRATION."[9] Below this heading is a warning appearing in capital letters and advising

---

**8.** Because of this conclusion, we need not address the Sanderses' other challenges to this agreement.

**9.** *See supra* note 3.

members they are waiving their right to litigate in court, including their right to a jury trial.[10] *See AutoNation USA Corp. v. Leroy,* 105 S.W.3d 190, 199 (Tex.App.–Houston [14th Dist.] 2003, no pet.) (concluding arbitration agreement placed in the middle of several provisions was not procedurally unconscionable). On this record, we conclude the Sanderses failed to establish the procedural unconscionability of the general arbitration agreement. Thus, the trial court erred in concluding the general arbitration agreement was procedurally unconscionable.

### CONCLUSION

We conclude the trial court should have severed the attorney's fees and costs provision from the general arbitration agreement and compelled arbitration. Because the trial court erred in not doing so, SSFCU has been erroneously denied the right to arbitrate under the FAA, and it is entitled to mandamus relief. *See In re AdvancePCS Health,* 172 S.W.3d at 608. The writ of mandamus is conditionally granted, and the related interlocutory appeal is dismissed as moot. *See In re D. Wilson Constr. Co.,* 196 S.W.3d 774, 783–84 (Tex.2006) (orig. proceeding) (dismissing interlocutory appeal as moot after granting full relief by writ of mandamus). We are confident the trial court will vacate its August 6, 2007 order denying SSFCU's motion to compel arbitration and enter an order compelling arbitration within ten days from the date of this opinion. Should the trial court fail to comply, then the writ of mandamus shall issue.

---

10. As additional grounds for refusing to compel arbitration, the trial court concluded the copy of the account terms and conditions attached to the motion to compel arbitration was incomplete. We do not address this ground because the Sanderses did not raise it below and our review shows the account terms and conditions attached to SSFCU's motion to compel is complete.