

NUMBER 13-11-00532-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

AETNA LIFE INSURANCE COMPANY, AETNA
HEALTH, INC., AND ROBERT J. GARZA,                    Appellants,

v.

WESLACO INDEPENDENT SCHOOL DISTRICT,                    Appellee.

On appeal from the 398th District Court
of Hidalgo County, Texas.

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Garza**
**Memorandum Opinion by Justice Rodriguez**

Appellants Aetna Life Insurance Company, Aetna Health, Inc. (collectively Aetna),

and Robert J. Garza challenge the trial court's denial of their motion to compel arbitration

in appellee Weslaco Independent School District's (WISD) lawsuit against appellants.

Aetna argues that the trial court abused its discretion in denying its motion to compel

because: WISD is bound by the arbitration provision of the contract on which its suit is based; WISD cannot avoid arbitration by attacking the contract as a whole as only the arbitrator can adjudicate WISD's contract defenses; alternatively, the trial court was not allowed to consider WISD's defenses as they were not properly raised; and regardless, WISD failed to establish its defenses as a matter of law. Garza joins in the foregoing arguments by Aetna regarding the general validity and enforceability of the agreement and argues separately that the arbitration clause was also enforceable as to him as a non-signatory of the contract between WISD and Aetna. We reverse and remand.

## I. Background

In 2007, WISD contracted with Aetna to administer WISD's self-funded and self-billed benefits plan for the 2007-2008 school year. Garza is an insurance agent who acted as a broker for Aetna and WISD in their contract negotiations and serviced the insurance policy during the contract period. Garza was paid a commission for his services.

The contract between Aetna and WISD was signed by Dr. Richard Rivera, WISD's superintendent, in March 2008[1] and provided that Aetna would be compensated by a value-based-pricing system, wherein it would retain as its fee 9.7% of the difference between the billed charges and the negotiated rate. Under the contract, Aetna invoiced WISD for the fee, and WISD paid the invoices. The contract also contained an arbitration clause, which provided that "[a]ny controversy or claim arising out of or relating to this Agreement or the breach, termination, or validity thereof . . . shall be settled by

---

[1] Although not signed until March 2008, the agreement between the parties was effective for the entire 2007-2008 school year.

binding arbitration."   Finally, the contract contained an integration clause, which provided that "[t]his Services Agreement (including incorporated attachments) constitutes the complete and exclusive contract between the parties and supersedes any and all prior or contemporaneous oral or written communications or proposals not expressly included herein."

In February 2010, WISD sued Aetna for breach of contract, breach of fiduciary duty, breach of the duties of good faith and fair dealing, fraud, negligent misrepresentation, and violation of the Texas Theft Liability Act.   The underlying premise of all of WISD's claims against Aetna—both the contract and tort claims—was that the agreement signed by Superintendent Rivera differed in material terms from the "best and final" offer negotiated by Aetna and accepted and authorized by the WISD Board of Trustees at a May 2007 school board meeting.   WISD specifically pled that "the [written contract] executed by Aetna and WISD for the 2007-2008 plan year constituted an enforceable agreement."   But nowhere in its petition did WISD challenge the validity of the arbitration clause.

WISD also sued Garza for fraud, negligent misrepresentation, tortious interference with a contractual relationship, and violation of the Texas Theft Liability Act.   The underlying premise of all of WISD's claims against Garza was that Aetna invoiced WISD, under the written contract, for the commissions Aetna paid to Garza; WISD claimed that it never agreed to pay any commissions to Garza and that the contract did not authorize Aetna to invoice WISD for those commissions.   In its negligence cause of action against Garza, WISD also claimed that Garza failed to perform his duty to WISD of monitoring the insurance plan, including billing history and payments under the contract, and this failure

3

proximately caused injury to WISD.

Appellants moved to compel arbitration under the contract. WISD responded to the motion to compel on the day of the hearing on the motion. WISD argued in its response that because the Board "never agreed to the fees listed in the fee schedule" of the written contract, the contract, "and the arbitration clause therein, [are] void and unenforceable because the school district cannot be bound by an agreement that the school district board of trustees has not approved." WISD also argued in its response that the contract, "as well as the arbitration clause within it, are unenforceable as a matter of law" because "the fees cited in the fee schedule were different than those approved" by the Board and there was, therefore, no meeting of minds and, alternatively, the written contract "constituted a modification to the original agreement."

At the hearing on the motion to compel, WISD argued that Superintendent Rivera was only authorized to sign an agreement that contained fee provisions approved by the Board at its May 14, 2007 meeting. In support of its arguments, WISD introduced the agenda and minutes for the May 14 Board meeting and the testimony of Board member Ivan Perez, who testified that the Board authorized an $8 per employee per month fee, not a value-based fee system. In his testimony, Perez also stated that: the Board discovered the value-based fee schedule during the 2007-2008 school year; WISD continued the contract for the 2008-2009 school year; WISD never attempted to rescind the contract during that time; and Dr. Rivera was never admonished for signing an unauthorized agreement. Perez provided no testimony regarding the Board's approval

4

or lack of approval of the arbitration clause.[2] The trial court then denied Aetna's motion to compel arbitration, and this accelerated appeal followed.

## II. Aetna's Notice of Appeal

We note as a threshold matter that WISD devotes a considerable amount of its brief to a contention that this Court lacks jurisdiction because Aetna's notice of appeal was untimely. The order denying arbitration was entered on July 21, 2011. Using that date, the rules provide that Aetna had until August 10, 2011 to file its notice of appeal. *See* TEX. R. APP. P. 26.1(b). Aetna's notice was not filed until August 11, 2011. Aetna filed a motion for extension of time to file its notice of appeal on August 15, 2011. *See* TEX. R. APP. P. 26.3. We granted that motion. At oral argument, WISD moved that we reconsider the granting of Aetna's motion to extend time, arguing that Aetna's motion did not comply with rule 10.5 in that it provided an inadequate reason for the late filing. *See* TEX. R. APP. P. 10.5(b) (providing that a motion to extend time to file a notice of appeal must state, in relevant part, "the facts relied on to reasonably explain the need for an

---

[2] With regard to the arbitration clause, specifically, Perez's only testimony was as follows:

| | |
|---|---|
| [Counsel for Garza]: | You said and I wrote it down that the superintendent brought to the Board concerns about the cost for the program. |
| | Did the superintendent, Dr. Rivera, ever come to the Board with the concern that in this written contract that had been in force for two years that there was an arbitration provision? |
| | . . . . |
| [Perez]: | Did he ever come to the Board and tell the Board that – |
| [Counsel for Garza]: | Yeah, did the superintendent who had been in charge of administering the day-to-day affairs of the District ever come to the Board and say, hey, you guys, they've stuck an arbitration provision in this contract. It didn't happen, did it? |
| [Perez]: | No. |

extension"). We find WISD's arguments concerning Aetna's motion for extension unconvincing.

In determining whether an appellant's motion for extension of time complies with rules 26.3 and 10.5, we apply a liberal standard; "[a]ny conduct short of deliberate or intentional noncompliance qualifies as inadvertence, mistake, or mischance." *Garcia v. Kastner Farms, Inc.*, 774 S.W.2d 668, 670 (Tex. 1989); *see also Hone v. Hanafin*, 104 S.W.3d 884, 887 (Tex. 2003). Thus, the proper focus is whether the appellant deliberately or intentionally failed to comply—in other words, whether the circumstances show the party made "a decision to ignore" the deadline for filing its notice of appeal. *Calce v. Dorado Exploration, Inc.*, 309 S.W.3d 719, 731-32 (Tex. App.—Dallas 2010, no pet.) Here, Aetna's motion for extension of time included the affidavit of its counsel, in which counsel averred as follows:

> 3. Aetna's counsel did not find out about the [order denying the motion to compel] entered on July 21, 2011 . . . until August 11, 2011. On August 11, 2011, at approximately 2:00 p.m., we learned from [WISD]'s counsel that a docket control conference had been set for 2:30 p.m. that day, and that the Court had ruled on pending motions and had signed an Order on July 21, 2011. Before that time, Aetna's counsel had not received any notice from the court, and neither knew nor had notice of the court's Order.

> 4. Assuming the Order was signed on July 21, 2011, Aetna's notice of accelerated appeal would have been due August 10, 2011. Aetna filed its notice of accelerated appeal on August 11, 2011, however, the same day it found out about the order.

The record substantiates counsel's averments. The facsimile time-stamp indicates that Aetna filed its notice of appeal at approximately 4:45 p.m. on August 11, 2011, only two hours after it learned from WISD's counsel of the trial court's order. These are not circumstances showing that Aetna made a deliberate and intentional

6

decision to ignore the appellate deadlines. Rather, Aetna's prompt filing of their notice of appeal within hours of first learning of the trial court's order shows diligence. This is not a case, as WISD contends, where Aetna made no effort to provide an explanation. The affidavit provided by Aetna's counsel demonstrates circumstances of inadvertence, mistake, or mischance such that an extension of time was appropriate.

In light of the foregoing, we cannot agree with WISD that we lack jurisdiction over Aetna's accelerated appeal. The explanation provided in the motion for extension of time was adequate. We deny WISD's motion to reconsider our granting of Aetna's motion for extension of time and conclude that Aetna has properly invoked our jurisdiction.

### III. The Motion to Compel

Appellants argue that the trial court abused its discretion in denying their motion to compel arbitration. We agree.

### A. Standard of Review & Applicable Law

In general, we review a trial court's denial of a motion to compel arbitration under an abuse of discretion standard. *In re Labatt Food Serv.*, 279 S.W.3d 640, 642-43 (Tex. 2009). A trial court abuses its discretion when it acts arbitrarily or unreasonably and without reference to any guiding rules or principles. *Downer v. Aquamarine Operators*, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985). Under this abuse of discretion standard, we defer to the trial court on factual determinations, but review legal issues de novo. *In re Labatt Food Serv.*, 279 S.W.3d at 642-43.

"In evaluating a motion to compel arbitration, a court must determine first whether a valid arbitration agreement exists, and then whether the agreement encompasses the

claims raised." *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 781 (Tex. 2006); *see also In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005). The party moving to compel arbitration bears the burden to show a valid agreement to arbitrate. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003). Once a party establishes the existence of an arbitration agreement and that the claim falls within the scope of the arbitration agreement, though, the trial court must compel arbitration and stay its own proceedings, unless the party opposing arbitration proves a defense precluding enforcement. *In re C & H News Co.*, 133 S.W.3d 642, 645 (Tex. App.—Corpus Christi 2003, orig. proceeding). Here, WISD has never disputed the scope of the arbitration clause at issue; the defenses it advanced before the trial court and now on appeal are relevant only to the first prong of the determination, whether a valid arbitration agreement exists. And whether a valid arbitration agreement exists is a legal question that we review de novo. *In re D. Wilson Constr. Co.*, 196 S.W.3d at 781; *J.M. Davidson, Inc.*, 128 S.W.3d at 227*.*

An arbitration provision is severable from the remainder of the contract for purposes of determining its validity. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006).

> Challenges to the validity of arbitration agreements "upon such grounds as exist at law or in equity for the revocation of any contract" can be divided into two types. One type challenges specifically the validity of the agreement to arbitrate. The other challenges the contract as a whole, either on a ground that directly affects the entire agreement (e.g., the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid.

*Id.* at 444 (internal citations omitted). Arbitration agreements "may be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'"

8

*Rent-A-Center, West, Inc. v. Jackson*, 130 S.Ct. 2772, 2776 (2010) (quotation omitted). But "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." *Buckeye Check Cashing*, 546 U.S. at 445-46. "[A] party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate." *Rent-A-Center*, 130 S.Ct. at 2778; *see In re Olshan Found. Repair Co.*, 328 S.W.3d 883, 898 (Tex. 2010) ("[W]hen the parties have contracted for arbitration of their disputes, a trial court 'may consider only issues relating to the making and performance of the agreement to arbitrate.'" (quotation omitted)).

## B. Aetna's Motion to Compel

The motion to compel in this case was based on the arbitration clause in Aetna's written contract with WISD. Because each of WISD's causes of action arose from the contractual relationship between it and Aetna, the scope of the arbitration clause covered every cause of action brought by WISD in its suit against Aetna—WISD does not dispute the scope of the clause. The only disputed issue before the trial court and before us now on appeal is whether appellants met their burden to prove a valid agreement to arbitrate. We believe they met this burden.

The evidence before the trial court included the written contract with Aetna signed by WISD Superintendent Rivera, whom Board member Perez testified was authorized to sign contracts on WISD's behalf. WISD pled in its petition that the written contract "constituted an enforceable agreement." The General Conditions Addendum to this written contract contained the arbitration clause, which plainly provided for the arbitration of all disputes arising out of the contract. The contract also contained an integration

9

clause on its first page, stating that the written contract "constitutes the complete and exclusive agreement between the parties and supersedes" any prior oral agreements or understandings. Finally, the testimony of Board member Perez at the hearing on the motion to compel indicated that the Board at least tacitly approved of the arbitration clause: he testified that, although other provisions, i.e., the fee schedule, were eventually discovered to be problematic, the arbitration clause was never brought to the Board's attention or otherwise questioned. This evidence all supports a conclusion that the arbitration clause relied upon by appellants in their motion to compel was valid.

The only evidence negating the validity of the contract related to the validity of the contract, as a whole, not to the arbitration clause, specifically, and the trial court was therefore not permitted to consider it in making its determination on the validity of the arbitration clause. *See In re Olshan Found. Repair Co.,* 328 S.W.3d at 898. In both its response to the motion to compel and now on appeal, WISD makes the following arguments concerning the validity and enforceability of its written contract with Aetna. First, citing the Texas Education Code and various cases interpreting its requirements, WISD argues that because the Board never approved the fee schedule contained in the written contract, Superintendent Rivera had no authority to sign that contract. *See* TEX. EDUC. CODE ANN. § 11.151 (West 2006) (identifying the general duties of the school board), § 11.1511 (identifying specific duties of the school board, including entering contractual relationships and delegating contractual authority to the superintendent), § 11.201 (identifying the duties of the superintendent) (West Supp. 2011); *Davis v. Duncanville Indep. Sch. Dist.*, 701 S.W.2d 15, 17 (Tex. App.—Dallas 1985, writ dism'd) ("The legislature has granted to the Board of Trustees of the District the exclusive power

10

to manage and govern the schools within its jurisdiction. It is a well-established rule in Texas that where the legislature has committed a matter to a political subdivision of the state, that subdivision may act only as a body corporate at a properly called meeting. This general rule applies to governing bodies of school districts." (citations omitted)); *Toyah Indep. Sch. Dist. v. Pecos-Barstow Indep. Sch. Dist.*, 466 S.W.2d 377, 380 (Tex. Civ. App.—San Antonio 1971, no writ) (same). WISD also argues generally that there was no meeting of the minds on the fee schedule and that the written contract signed by Superintendent Rivera constituted a modification to the original agreement between the parties. Each of these arguments is a challenge to formation and subsequent performance and enforcement of the contract, as a whole, not the arbitration clause, specifically.[3] *See Rent-A-Center*, 130 S.Ct. at 2778; *Buckeye Check Cashing*, 546 U.S. at 445-46. The trial court was not permitted to consider the foregoing arguments in making its determination on the validity of the arbitration clause because the only relevant arguments in that regard would have been those related to the making of the agreement to arbitrate, specifically. *See In re Olshan Found. Repair Co., LLC*, 328 S.W.3d at 898.

In sum, we conclude that appellants met their burden to prove the existence of a valid agreement to arbitrate, and WISD's arguments to the contrary were relevant only to the validity of the contract as a whole, issues that are reserved for the arbitrator to resolve.

---

[3] On appeal, WISD also argues that the written contract was void and unenforceable because the earlier terms accepted by the Board did not contain an arbitration provision. But to the extent we can construe this argument as a direct challenge to the validity of the arbitration agreement, WISD makes it for the first time on appeal. Neither in its written response to Aetna's motion to compel nor at the hearing on Aetna's motion did WISD specifically challenge the validity of the arbitration clause. WISD's only substantive challenge to the arbitration clause is made for the first time in its appellate brief, wherein it argues that the Board never approved the arbitration clause and Superintendent Rivera thus had no authority to sign a contract containing an arbitration clause. This argument differs markedly from the arguments made before the trial court, which were plainly challenges to the validity of the contract as a whole, not the arbitration clause, specifically. We may not address for the first time on appeal an argument never made to the trial court. *See* TEX. R. APP. P. 33.1.

11

*See id.*; *J.M. Davidson, Inc.*, 128 S.W.3d at 227; *see also Buckeye Check Cashing*, 546 U.S. at 445-46. In light of this, the trial court did not follow guiding rules and principles and therefore abused its discretion in denying the motion to compel. Appellants' issues regarding the validity and enforceability of the arbitration clause are sustained.[4]

## C. Applicability of Arbitration Clause to Garza

Garza argues by a separate issue that the trial court erred in denying the motion to compel as to him, specifically, because he was entitled to invoke the arbitration clause as a non-signatory to the contract between Aetna and WISD. Again, we agree.

Under the doctrine of equitable estoppel, a non-signatory to an agreement may be bound by an arbitration clause when the signatory plaintiff must rely on the agreement in asserting claims against the non-signatory. *In re Merrill Lynch Co. FSB*, 123 S.W.3d 549, 555 (Tex. App.—San Antonio 2003, orig. proceeding) (citing *Grigson v. Creative Artists Agency, LLC*, 210 F.3d 524, 527-28 (5th Cir. 2000)); *see also Lette v. Brooke Corp.*, No. 13-02-00527-CV, 2004 WL 1797578, at *5 (Tex. App.—Corpus Christi Aug. 12, 2004, pet. denied) (mem. op.). "When each of a signatory's claims against a non-signatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate." *In re Merrill Lynch*, 123 S.W.3d at 555 (citation omitted).

Garza was not a signatory to the contract between Aetna and WISD. But in each of WISD's claims against Garza—fraud, negligent misrepresentation, tortious interference, and violation of the Texas Theft Liability Act—WISD relied on its contract

---

[4] Having sustained Aetna's issue for the reason that the evidence proved a valid agreement to arbitrate and that WISD failed to specifically challenge the validity of the agreement to arbitrate, we need not address the remainder of Aetna's arguments. *See* TEX. R. APP. P. 47.1.

with Aetna. Each claim against Garza was based either: on the theory that Aetna improperly invoiced WISD, under the contract's billing arrangements, for the commissions Aetna owed Garza; or on the theory that Garza had a duty to WISD to monitor the contract's implementation within WISD. In short, each of WISD's claims against Garza made reference to and presumed the existence of the written agreement between WISD and Aetna, and arbitration of those claims was appropriate. *See id.* We therefore conclude that the trial court abused its discretion in failing to enforce the arbitration clause with respect to WISD's claims against Garza. We sustain Garza's separate appellate issue regarding the specific applicability to him of the arbitration clause in the contract between Aetna and WISD.

## IV. Conclusion

We reverse the order of the trial court denying appellants' motion to compel and remand for proceedings consistent with this opinion.

NELDA V. RODRIGUEZ
Justice

Delivered and filed the
31st day of May, 2012.