TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-10-00375-CV






SEB, Inc. d/b/a Circle B Mobile Homes; Sam P. Bath, Jr.; and Larry Cousins, Appellants


v.


Alvie Campbell and Julia Campbell, Appellees






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT

NO. D-1-GN-07-00756, HONORABLE PAUL R. DAVIS, JR., JUDGE PRESIDING






M E M O R A N D U M O P I N I O N


 This is an interlocutory appeal from a trial court's order denying a motion to compel
arbitration. In a single issue, appellants SEB, Inc. d/b/a Circle B Mobile Homes ("SEB"),
Sam P. Bath, Jr., and Larry Cousins (collectively, "Circle B") contend the trial court erred because
the claims asserted against them by appellees Alvie Campbell and Julia Campbell are subject to a
valid arbitration agreement and Circle B did not waive the right to arbitration. We reverse the trial
court's order and remand the cause with instructions that the trial court compel arbitration of the
Campbells' claims against Circle B.


BACKGROUND

 The Campbells purchased a manufactured home from SEB in 2004. Bath was SEB's
president, and Cousins was a salesman for SEB involved in the sale. The home was manufactured
by Cavco Industries, Inc. ("Cavco"). The Campbells also purchased the land on which the
manufactured home was located from 967, Ltd. ("967"). Cottonwood Enterprise, Inc.
("Cottonwood") was 967's general partner, and Doug Lewis was Cottonwood's vice president. In
August 2006, the Campbells filed suit against SEB, Bath, Cousins, Cavco, 967, and Cottonwood
asserting causes of action arising out of the negotiation and sale of the home and land. Specifically,
the Campbells alleged causes of action for violations of the Texas Deceptive Trade Practices Act,
breach of contract, promissory estoppel, trespass to chattel, negligence, negligence per se, common
law fraud, fraud in a real estate transaction, and civil conspiracy. (1) Over the next 45 months, the
Campbells pursued their claims against these defendants by serving discovery, responding to
discovery requests, and responding to dispositive motions filed by Cavco, 967, Cottonwood, and
Lewis. Circle B's litigation activities during that time included responding to the Campbells'
discovery requests, responding to limited discovery from co-defendant Cavco, serving the Campbells
with requests for disclosure, noticing two depositions that ultimately were not taken, and
participating in depositions of Alvie Campbell and Julia Campbell that were noticed by a
co-defendant.

 In June 2010, Circle B filed a motion to compel arbitration of the claims asserted
against it by the Campbells, relying on a document titled "Arbitration Agreement" that the
Campbells signed on the day they closed on the home and land purchase. The Arbitration
Agreement was signed by Bath under the company name "Circle B Homes." In their response and
objection to the motion to compel arbitration, the Campbells asserted that Circle B had waived the
right to arbitration by substantially invoking the judicial process to their prejudice. At the hearing
on the motion to compel arbitration, the Campbells also argued that SEB was not a signatory to the
Arbitration Agreement and therefore could not enforce it. The Campbells contend that the only
parties to the Arbitration Agreement are the Campbells and "Circle B Homes," an entity they claim
did not exist at the time the Arbitration Agreement was signed, is not presently a party to the
litigation, and is not the entity from whom the Campbells purchased their manufactured home. (2)

 After a hearing, the trial court denied Circle B's motion to compel arbitration without
specifying the grounds for its ruling. This appeal followed.


STANDARD OF REVIEW

 In its motion to compel arbitration, Circle B sought to compel arbitration under the
Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16 (2006) and/or the Texas Arbitration Act
("TAA"), Tex. Civ. Prac. & Rem. Code Ann. §§ 171.001-.098 (West 2005). The Arbitration
Agreement does not specify which law applies, and neither the parties nor the trial court has taken
a position on the governing law. (3) In the end, however, there is no material difference between the
two standards. Until recently, orders denying motions to compel arbitration subject to the FAA were
not subject to interlocutory appeal; instead, they were reviewed in mandamus proceedings using an
abuse-of-discretion standard. See Jack B. Anglin Co. v. Tipps, 842 S.W.2d 266, 272-73 (Tex. 1992). 
Under that standard we defer to the trial court's factual determinations if they are supported by
evidence, but we review the trial court's legal determinations de novo. In re Labatt Food Serv., L.P.,
279 S.W.3d 640, 643 (Tex. 2009). As amended in 2009, section 51.016 of the civil practice and
remedies code now permits courts to review such orders by appeal:


 In a matter subject to the [FAA], a person may take an appeal or writ of error to the
court of appeals from the judgment or interlocutory order of a district court, county
court at law, or county court under the same circumstances that an appeal from a
federal district court's order or decision would be permitted by 9 U.S.C. Section 16.



Tex. Civ. Prac. & Rem. Code Ann. § 51.016 (West Supp. 2010). Section 51.016 applies to this
appeal because it was initiated after September 1, 2009, the effective date of the statute. This Court
has not addressed the standard of review applicable to appeals brought pursuant to section 51.016. 
However, in appeals of orders denying arbitration under the TAA, we also apply a no-evidence
standard to the trial court's factual determinations and a de novo review to its legal determinations. 
See Trammell v. Galaxy Ranch Sch., L.P., 246 S.W.3d 815, 820 (Tex. App.--Dallas 2008, no pet.).

 Therefore, we apply the same standard when reviewing an interlocutory order denying
a motion to compel arbitration regardless of whether the appeal is brought pursuant to the TAA or
is authorized by civil practice and remedies code section 51.016. We will defer to the trial court's
factual determinations if supported by the evidence, review its legal determinations de novo, and
reverse the trial court's order only if we conclude that the trial court abused its discretion by denying
the motion to compel arbitration. See id.



DISCUSSION

 In a single issue, Circle B contends that the trial court erred because the claims
asserted against it by the Campbells are subject to a valid arbitration agreement and they did not
waive their right to arbitrate. A party seeking to compel arbitration must establish the existence of
a valid, enforceable arbitration agreement and that the asserted claims fall within the agreement's
scope. In re Oakwood Mobile Homes, Inc., 987 S.W.2d 571, 573 (Tex. 1999). The party seeking
arbitration has the initial burden to present evidence of an arbitration agreement. Id. Once the
existence of an arbitration agreement has been established, a presumption attaches favoring
arbitration. Henry v. Gonzalez, 18 S.W.3d 684, 689 (Tex. App.--San Antonio 2000, pet. dism'd by
agr.). The burden then shifts to the opposing party to present evidence that the agreement was
procured in an unconsionable manner or induced or procured by fraud or duress; that the other party
has waived its right to compel arbitration under the agreement; or that the dispute falls outside the
scope of the agreement. In re Oakwood Mobile Homes, Inc., 987 S.W.2d at 573.


Is There a Valid Arbitration Agreement?

 Whether an enforceable agreement to arbitrate exists is a legal question that we
review de novo. J. M. Davidson, Inc. v. Webster, 128 S.W.3d 223, 227 (Tex. 2003). At the hearing
on the motion to compel arbitration, SEB introduced into evidence a document titled "Arbitration
Agreement" dated October 29, 2004 (the "Arbitration Agreement"). This agreement provides:


 This Arbitration Agreement ("Agreement") is executed contemporaneously with an
installment or sales contract ("Contract") for the purchase of a manufactured home
("Home") as described in the Contract by the purchaser ("Purchaser") from the
selling retailer ("Retailer").


 . . .


 All claims, disputes, and controversies arising out of or relating in any way to the
sale, purchase, or occupancy of the Home including, but not limited to, any
negotiations between the parties, the design, construction, performance, delivery,
condition, installation, financing, repair or servicing of the Home and any warranties,
either express or implied, pertaining to the Home, and including claims for equitable
relief or claims based on contract, tort, statute, or any alleged breach, default, or
misrepresentation, will be resolved by binding arbitration administered by the
American Arbitration Association ("AAA") under its Commercial Arbitration Rules. 
Any contests to the validity or enforceability of this Agreement shall be determined
by the provisions of the Federal Arbitration Act and the rules of the AAA.


 . . .


 CIRCLE B HOMES

 6610 E Ben White

 Austin, Texas 78741




 By: /s/ Sam P. Bath X /s/ Alvie Campbell

 X /s/ JCampbell



The Campbells acknowledge that (i) they signed the Arbitration Agreement as part of the process
by which they acquired the mobile home; (ii) they were the purchaser of the mobile home, and
therefore they are the "Purchaser" referred to in the Arbitration Agreement; and (iii) they purchased
the mobile home from SEB. The Campbells do not assert that there was fraud, deceit, or
misrepresentation involved in their signing the Arbitration Agreement. Accordingly, the Campbells
are bound by the agreement. See In re McKinney, 167 S.W.3d 833, 835 (Tex. 2005) (absent fraud,
misrepresentation, or deceit, parties are bound by terms of contract signed). In its verified motion
to compel arbitration, SEB stated that it entered into the Arbitration Agreement with the Campbells. 
Bath, SEB's president, signed the Arbitration Agreement on behalf of "Circle B Homes." SEB
moved to compel arbitration on the ground that SEB and the Campbells agreed at closing that all
disputes arising out of or relating to the Campbells' purchase of the mobile home would be resolved
by binding arbitration.

 The Campbells maintain that the Arbitration Agreement is "not valid or enforceable"
by SEB because it was not signed by SEB. In this regard, the Campbells assert that Sam P. Bath's
signature on behalf of "Circle B Homes" is insufficient to constitute execution of the Arbitration
Agreement by SEB. But the Arbitration Agreement expressly provides that any contests to its
validity or enforceability shall be determined by the provisions of the Federal Arbitration Act, which
does not require an arbitration agreement to be signed, so long as it is in writing and agreed to by the
parties. See In re AdvancePCS Health L.P., 172 S.W.3d 603, 606 (Tex. 2005); Security Serv. Fed.
Credit Union v. Sanders, 264 S.W.3d 292, 301 (Tex. App.--San Antonio 2008, no pet.);
In re Autotainment Partners Ltd. P'ship, 183 S.W.3d 532, 535 (Tex. App.--Houston [14th Dist.]
2006, orig. proceeding); see also Valero Ref., Inc. v. M/T Lauberhorn, 813 F.2d 60, 63-64 (5th Cir.
1987) (although FAA requires arbitration agreement to be written, it does not expressly require 
agreement to be signed by parties). Moreover, a contract can still be effective if signed by only one
party. See DeClaire v. G & B McIntosh Family Ltd. P'ship., 260 S.W.3d 34, 44 (Tex.
App.--Houston [1st Dist.] 2008, no pet.). The Arbitration Agreement includes nothing to indicate
that it was not effective unless signed by all parties. Consequently, even if we agreed with the
Campbells' assertion that SEB did not actually sign the Arbitration Agreement, such alleged failure
would not, in this case, constitute a bar to the agreement's validity or enforceability.

 The Campbells next contend that SEB is not a party to the Arbitration Agreement
because (1) the name SEB, Inc. d/b/a Circle B Mobile Homes does not appear in the text of the
agreement, and (2) the party that signed the agreement was "Circle B Homes," not "Circle B Mobile
Homes." Although the Arbitration Agreement does not refer to SEB by name, it does refer to the
"selling retailer" of the mobile home, which all parties agree was SEB. Moreover, the fact that the
agreement was signed by Sam P. Bath under the company name "Circle B Homes" supports, rather
than undermines, the conclusion that SEB is a party to the Arbitration Agreement. Circle B Mobile
Homes is a d/b/a of SEB, the company from which the Campbells bought their mobile home. 
Sam P. Bath is its president. Bath's signature on the Arbitration Agreement is consistent with, and
is further evidence supporting, SEB's contention that the purchaser and the seller of the mobile home
in question agreed to arbitrate any disputes arising from that transaction. We reject the Campbells'
suggestion that the omission of the word "Mobile" from the signature block proves that the
agreement is between them and an entity wholly unrelated to SEB called "Circle B Homes"--an
entity the Campbells acknowledge does not exist. The only reasonable conclusion is that the
omission of the word "Mobile" was an oversight, and that Bath's signature evidences that the retailer
(SEB) agreed to the arbitration provision. We hold that the evidence conclusively shows that the
Campbells and SEB agreed to arbitrate any disputes arising out of or related to the Campbells'
purchase of the manufactured home. We further conclude, and the Campbells do not contend
otherwise, that the claims asserted against SEB in this lawsuit all arise out of or relate to the home
purchase and are therefore covered by the Arbitration Agreement.

 The Arbitration Agreement also applies to the claims asserted against Bath and
Cousins. When the principal is bound by the terms of a valid arbitration agreement, its agents,
employees, and representatives are also covered by the agreement. See In re Merrill Lynch Trust
Co., 123 S.W.3d 549, 555 (Tex. App.--San Antonio 2003, orig. proceeding); McMillan v. Computer
Translation Sys. & Support, Inc., 66 S.W.3d 477, 481 (Tex. App.--Dallas 2001, orig. proceeding). 
The scope of an arbitration agreement may be extended to claims against agents of the principal
bound by the agreement when all the agents' allegedly wrongful acts relate to their behavior as
agents of the principal, and those acts were within the scope of the claims covered by the arbitration
provisions for which the principal would be liable. McMillan, 66 S.W.3d at 481; see also In re Vesta
Ins. Group, Inc., 192 S.W.3d 759, 762 (Tex. 2006) (parties to contract containing arbitration
provision generally intend to include disputes about agent's actions because actions of corporate
agent on behalf of corporation are deemed corporation's acts). Extending the scope of an arbitration
provision to an agent of the party who agreed to arbitration furthers the policy favoring arbitration
and the parties' intent to provide a single forum for resolving disputes arising under an agreement. 
See McMillan, 66 S.W.3d at 481 (citing Pritzker v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.,
7 F.3d 1110, 1121 (3rd Cir. 1993)).

 In the present case, the Campbells specifically alleged that their claims against Bath
and Cousins arose out of actions taken within the course and scope of their employment with SEB. 
The causes of action alleged against Bath and Cousins all arose out of or are related to the
Campbells' home purchase. On appeal, the Campbells do not dispute that they have asserted claims
against Bath and Cousins, as agents of SEB, that relate to the manufactured home purchase. Rather,
they contend that "no entity to which [] Bath and Cousins were agents is a party to the alleged
Arbitration Agreement." Because we have concluded that SEB is a party to the Arbitration
Agreement, the Campbells' only stated objection to Bath's and Cousins's motion to compel
arbitration fails. We hold that the claims asserted by the Campbells against both Bath and Cousins
are covered by the Arbitration Agreement.


Did Circle B Waive the Right to Arbitration?

 The Campbells assert that Circle B waived the right to arbitration by participating in
the underlying litigation for 45 months before moving to compel arbitration. As previously noted,
neither the trial court nor the parties indicate whether this action is governed by the TAA, the FAA,
or both, and the agreement fails to specify which law applies. The standard for determining waiver
of the right to arbitration, however, is the same under both the TAA and the FAA. See Sedillo
v. Campbell, 5 S.W.3d 824, 825 (Tex. App.--Houston [14th Dist.] 1999, no pet.). Courts will not
find that a party has waived a right to enforce an arbitration agreement by taking part in litigation
unless the party has substantially invoked the judicial process to the opposing party's detriment. See
In re Bank One, N.A., 216 S.W.3d 825, 827 (Tex. 2007); In re Serv. Corp. Int'l, 85 S.W.3d 171, 174
(Tex. 2002). Whether a party has waived arbitration by litigation conduct is a question of law,
which we review de novo. See Perry Homes v. Cull, 258 S.W.3d 580, 587 (Tex. 2008). A
strong presumption against waiver exists, and any doubts are resolved in favor of arbitration. 
See In re D. Wilson Constr. Co., 196 S.W.3d 774, 783 (Tex. 2006); In re Bruce Terminix Co.,
988 S.W.2d 702, 705 (Tex. 1998). Implying waiver from a party's actions is appropriate only if the
facts demonstrate that the party seeking to enforce arbitration intended to waive its arbitration right. 
See EZ Pawn Corp. v. Mancias, 934 S.W.2d 87, 89 (Tex. 1996).

 Waiver must be decided on a case-by-case basis looking at the totality of the
circumstances. See Perry Homes, 258 S.W.3d at 591. Factors considered in determining whether
a party has substantially invoked the judicial process include how much discovery has been
conducted and who initiated it, whether the discovery related to the merits rather than arbitrability
or standing, how much of the discovery would be useful in arbitration, and whether the movant
sought judgment on the merits. Id. at 591-92. Whether the movant is a plaintiff or defendant is also
relevant to the consideration, but does not alone justify a finding of waiver or change the "totality
of the circumstances test." Id. at 592.

 Circle B's use of the judicial process was limited to filing answers, serving a first and
later an amended request for disclosure, noticing two depositions that ultimately were not taken, and
participating in the depositions of Alvie Campbell and Julia Campbell that were noticed by
co-defendant Cavco. The remainder of the discovery was propounded either by the Campbells or
by other parties to the litigation. Circle B did not seek a judicial resolution of the dispute with the
Campbells, nor has it filed affirmative claims or dispositive motions. This is not a case in which the
party seeking arbitration turns to arbitration only after failing to obtain a satisfactory result in court. 
See In re Bruce Terminix Co., 988 S.W.2d at 704. While Circle B did not file the motion to compel
arbitration until 45 months after the suit was originally filed, delay alone is generally not sufficient
to establish waiver. See In re Vesta Ins. Group, Inc., 192 S.W.3d at 763.

 The Campbells argue that this Court should also consider the activities of
co-defendant Cavco because of "Cavco's consent to arbitration, its status as a beneficiary [of the
Arbitration Agreement], and considering that the Campbells will be forced to arbitrate their claims
against Cavco." As an initial matter, we note that Cavco did not file a motion to compel arbitration
and, because the issue is not before us, we express no opinion as to whether Cavco has waived any
right to arbitration it may have under the Arbitration Agreement. We do agree, though, that in
certain circumstances the litigation activities of a co-defendant may be relevant to the question of
whether a party seeking arbitration invoked the judicial process, as, for example, when a
co-defendant moves for summary judgment on an issue common to all defendants. In this case,
however, Cavco moved for summary judgment on causes of action asserted against it based on
particular facts not generally applicable to other co-defendants. Disposition of Cavco's motion for
summary judgment thus had no effect on the claims asserted against SEB, Bath, or Cousins. We
decline, therefore, to attribute Cavco's litigation activities to Circle B.

 Not only did the Campbells fail to show that Circle B substantially invoked the
judicial process, they also failed to establish that they suffered resulting prejudice. See Perry Homes,
258 S.W.3d at 595 (waiver of arbitration requires showing of prejudice); In re Bruce Terminix Co.,
988 S.W.2d at 704 ("Even substantially invoking the judicial process does not waive a party's
arbitration rights unless the opposing party proves that it suffered prejudice as a result."). A court
should not ordinarily infer waiver based on prejudice if a party seeking arbitration has conducted
only a minimal amount of discovery, and the party opposing arbitration has not met its burden of
showing sufficient prejudice. See In re D. Wilson Constr. Co., 196 S.W.3d at 783. Taking unfair
advantage of discovery proceedings that would not have been available in arbitration might
constitute sufficient prejudice to infer waiver. See Structured Capital Res. Corp. v. Arctic Cold
Storage, LLC, 237 S.W.3d 890, 895 (Tex. App.--Tyler 2007, no pet.). However, when only a
minimal amount of discovery has been conducted, and such discovery may also be useful for the
purpose of arbitration, courts do not ordinarily infer waiver based on prejudice to the party opposing
arbitration. See In re D. Wilson Constr. Co., 196 S.W.3d at 783; In re Vesta Ins. Group, Inc.,
192 S.W.3d at 763; In re Bruce Terminix Co., 988 S.W.2d at 763. Counsel for Circle B questioned
two witnesses during depositions noticed by Cavco. Circle B also responded to discovery
propounded by the Campbells. While the Campbells conducted a significant amount of discovery,
Circle B did not serve the Campbells with any discovery beyond routine requests for disclosure. In
Perry Homes, the supreme court observed that a party who requests a significant amount of
discovery is not prejudiced by getting it and taking it to arbitration to the same degree as a party who
produces significant discovery outside the stricter discovery limits of arbitration. 258 S.W.3d at 600. 
Moreover, the Arbitration Agreement states that arbitration is to be conducted in accordance with
the rules and procedures of the American Arbitration Association. Those rules permit the arbitrator
to allow discovery. See In re Bruce Terminix, 988 S.W.2d at 704-05. It is not clear what, if any,
information Circle B or the Campbells obtained through discovery that would not be useful in an
arbitration proceeding. There is no indication that Circle B obtained sensitive documents or
information through the discovery process that they would not have been able to obtain in the
arbitration proceeding. See Williams Indus., Inc. v. Earth Dev. Sys. Corp., 110 S.W.3d 131, 135
(Tex. App.--Houston [1st Dist.] 2003, no pet.).

 At the hearing on the motion to compel arbitration, the Campbells' attorney attempted
to establish prejudice by stating that he had "well over a hundred thousand dollars in just hard
attorney's fees working on motions, depositions, and preparation to try this case." The supreme
court has rejected a similar argument when, as here, the pre-trial costs were "largely self-inflicted"
because the plaintiff sent "far more discovery requests than he received" and the party seeking
arbitration did not engage in extensive discovery. See In re Vesta Ins. Group, Inc., 192 S.W.3d at
763 (no waiver when discovery activities of party seeking to compel arbitration were limited to
serving standard request for disclosure, noticing four depositions, and sending request for
production). Counsel for the Campbells further testified that his clients would be prejudiced because
"his fee agreement addresses acting as trial counsel in this matter, and does not address the issues
of acting as arbitration counsel." He stated that the Campbells would be "forced to obtain new
counsel" for an arbitration. Assuming the truth of this assertion, the Campbells created this problem
themselves by choosing to enter into such an agreement despite knowing that they had agreed to
arbitrate these claims. Any prejudice they may suffer as a result of their decision to retain an
attorney who was unable or unwilling to represent them in an arbitration proceeding is, like the
expense of discovery they conducted, "self-inflicted." The Campbells' attorney also stated at the
hearing that the added delay and expense of arbitration would prejudice the Campbells, but
"generalized complaints about delay and expense, absent explanations and evidentiary support, will
not establish prejudice." Structured Capital Res. Corp., 237 S.W.3d at 896; see also Texas
Residential Mortgage, L.P. v. Portman, 152 S.W.3d 861, 864 (Tex. App.--Dallas 2005, no pet.)
(party arguing waiver of arbitration identified no work she had done nor cost incurred in anticipation
of trial that she would not also have done or incurred in anticipation of arbitration hearing);
Associated Glass, Ltd. v. Eye Ten Oaks Invs., Ltd., 147 S.W.3d 507, 514 (Tex. App.--San Antonio
2004, orig. proceeding) (party urging waiver of arbitration did not submit evidence of increased
expense and therefore failed to show prejudice); Transwestern Pipeline Co. v. Horizon Oil & Gas
Co., 809 S.W.2d 589, 592 (Tex. App.--Dallas 1991, writ dism'd) (party who voluntarily incurred
legal fees by initiating suit did not show prejudice).

 We conclude that Circle B's predominantly defensive measures in response to the
Campbells' actions did not substantially invoke the litigation process to the Campbells' detriment
or prejudice. Moreover, the fact that the Campbells may have expended funds for legal fees is
insufficient to establish prejudice. By deciding to initiate and prosecute their lawsuit, the Campbells
voluntarily incurred these expenses and assumed liability for these costs. They cannot now rely on
those very expenses and costs to establish prejudice and prevent Circle B from invoking the right
to compel arbitration. Nothing before us demonstrates that these same expenses would not have
been incurred during arbitration, nor that they will not provide a benefit to the Campbells in
resolving this dispute in that forum.

 We conclude that the Campbells and Circle B were parties to a valid and enforceable
arbitration agreement, and that Circle B did not waive the right to arbitration by substantially
invoking the judicial process to the Campbells' detriment. It was therefore an abuse of discretion
for the trial court to deny Circle B's motion to compel arbitration. See Bowie Mem'l Hosp.
v. Wright, 79 S.W.3d 48, 52 (Tex. 2002) (trial court exceeds its discretion if it acts in arbitrary or
unreasonable manner or without reference to guiding rules or principles).


CONCLUSION For the reasons stated above, we reverse the trial court's order denying Circle B's
motion to compel arbitration. We remand the cause with instructions that the trial court compel

arbitration of the Campbells' claims against SEB, Bath, and Cousins in accordance with the terms
of the Arbitration Agreement. (4)



 _____________________________________________

 J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Puryear and Pemberton

Reversed and Remanded

Filed: March 2, 2011
1. The Campbells later amended their petition to assert causes of action against Lewis.
2. There is no dispute that the Campbells purchased the home from SEB, Inc. d/b/a Circle B
Mobile Homes.
3. Although the Arbitration Agreement recites that its "validity and enforceability" are
governed by the FAA, it does not indicate whether that statute or the TAA governs other aspects of
an arbitration proceeding pursuant to the agreement. Furthermore, the record does not include a copy
of the sales contract for the mobile home purchase. See In re L&L Kempwood Assocs., L.P.,
9 S.W.3d 125, 127 (Tex. 1999) ("[I]f the parties do not explicitly state which statute applies, the
courts must look to the contract between the parties, applying the FAA if the contract involves
interstate commerce.").
4. In its brief, Circle B requests this Court to render judgment ordering all parties to
arbitration. As previously noted, the issue of the arbitrability of the Campbells' claims against
parties other than SEB, Bath, and Cousins is not before us in this appeal, and we express no opinion
with regard to that issue.